# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EBURY STREET CAPITAL, LLC, EB 1EMIALA, LLC, EB 2EMIALA, LLC, EBURY FUND 1 NJ LLC, and EBURY FUND 2 NJ, LLC,<br><br>    Plaintiffs–Counterclaim Defendants,<br><br>v.<br><br>THOMAS R. MCOSKER, ANDREW KERNAN, BADEL HERNANDEZ, LIENCLEAR – 0001, LLC, LIENCLEAR – 0002, LLC, LIENCLEAR, LLC, BLOXTRADE, LLC, BCMG SERVICES, LLC, BCMG INTERNATIONAL, LLC, and SITONA VENTURES LLC,<br><br>    Defendants–Counterclaim Plaintiffs–Third-Party Plaintiffs,<br><br>v.<br><br>JOHN HANRATTY, PING XIE, SARAH WELLS, DENNISSE MÉNDEZ, SHIRLEY VEGA, JOHN BRONZO, PATRICK SEYMOUR, EB LEVRE I, LLC, EBURY FUND 1, LP, EBURY FUND 2, LP, EB 1EMIDC, LLC, RED CLOVER 1, LLC, WHITE CLOVER 1, LLC, BLACK CLOVER I, LLC, EBURY FUND IC1, LLC, EBURY FUND 2CI, LLC, EBURY RE, LLC, AMAURY SANTIAGO and LESSER FLAMINGO LLC,<br><br>    Third-Party Defendants. | C.A. No. 21-cv-00203-MN-JLH |

**THE EBURY PARTIES' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS AMENDED COUNTERCLAIMS AND AMENDED THIRD-PARTY COMPLAINT**

| | |
|---|---|
| GUSRAE KAPLAN NUSBAUM PLLC<br>Kari Parks (*pro hac vice*)<br>120 Wall Street, 25th Floor<br>New York, New York 10005<br>(212) 269-1400<br><br>May 23, 2023 | SMITH KATZENSTEIN & JENKINS LLP<br>Kathleen M. Miller (No. 2898)<br>Julie M. O'Dell (No. 6191)<br>Brandywine Building<br>1000 N. West Street, Suite 1501<br>Wilmington Delaware 19801<br>(302) 652-8400 |

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Delaware Law "Borrows" Puerto Rico's Limitations Period and Bars All of the McOsker Parties' Tort Claims .................................................................................................... | 1 |
| II. | The Opposition's Substantive Tort Arguments Ignore Inconvenient Law ......................... | 5 |
| III. | The Vague CRIM Contract Allegations Neither Trump the BCMG Operating Agreement's Integration Clause Nor Plead Any Ebury Party's Scienter ................................................. | 7 |
| IV. | The Trystone Trades Allegations are Still Incoherent ......................................................... | 9 |
| V. | The McOsker Parties Identify No Allegations That Transform Their Routine Business Complaints Into a Federal RICO Case ................................................................................ | 10 |
| VI. | The Amended Pleading Pleads No Facts to Justify Dragging the Third-Party Defendants Into this Action .................................................................................................................... | 12 |
| CONCLUSION ............................................................................................................................. | | 12 |

## TABLE OF AUTHORITIES

Page(s)

Cases

Brady v. Pettinaro Enters.,
    870 A.2d 513 (Del. Ch. 2005)...................................................................................... 4

Afzal v. New Jersey Board,
    2022 WL 4533826 (3d Cir. Sep. 28, 2022).............................................................. 9, 12

Delargy v. Hartford Accident & Indem. Co.,
    1986 WL 11562 (Del. Super. Ct. Oct. 8, 1996) ............................................................ 1

Elmer v. Tenneco Resins, Inc.,
    698 F. Supp. 535 (D. Del. 1988).................................................................................. 1

Flip Mortg. Corp. v. McElhone,
    841 F.2d 531 (4th Cir. 1988) ..................................................................................... 10

Garrett v. Wexford Health,
    938 F.3d 69 (3d Cir. 2019)........................................................................................ 12

In re Coca-Cola Enters., Inc. S'holder Litig.,
    2007 WL 312370 (Del. Ch. Oct. 17, 2007) ................................................................. 4

In re Fruehauf Trailer Corp.,
    250 B.R. 168 (D. Del. Bankr. 2000) ........................................................................... 2

In re ML/EQ Real Estate P'ship Litig.,
    1999 WL 1271885 (Del. Ch. Dec. 21, 1999) .............................................................. 2

Interactive Corp. v. Vivendi Universal, S.A.,
    2004 WL 1572932 (Del. Ch. June 30, 2004).............................................................. 8

K-Mart Corp. v. Davis,
    756 F. Supp. 62 (D.P.R. 1991).................................................................................... 7

Kolar v. Preferred Real Est. Invs., Inc.,
    361 F. App'x 354 (3d Cir. 2010) .............................................................................. 11

Krahmer v. Christie's, Inc.,
    911 A.2d 399 (Del. Ch. 2006)..................................................................................... 3

Lebanon Cnty. Employees' Retirement Fund v. Collis,
    287 A.3d 1160 (Del. Ch. 2022)................................................................................... 3

Lum v. Bank of Am.,
    361 F.3d 223 (3d Cir. 2004) .................................................................................................. 11

N. Am. Catholic Educ Programming Found., Inc. v. Cardinale,
    567 F.3d 8 (1st Cir. 2009) ...................................................................................................... 8

Penn. Emp. Benefit Tr. Fund v. Zeneca, Inc.,
    710 F. Supp. 2d 458 (D. Del 2010) ........................................................................................ 4

Ramirez Morales v. Rosa Viera,
    815 F.2d 2 (1st Cir. 1987) ...................................................................................................... 4

Ramunno v. Crawley,
    705 A.2d 1029 (Del. 1998) .................................................................................................... 9

Rivera Encarnacion v. E.L.A.,
    113 P.R.R. 498 (P.R. 1982) .................................................................................................... 4

Rodriguez Narvaez v. Nazario,
    895 F.2d 38 (1st Cir. 1990) .................................................................................................... 3

Rudginski v. Pullella,
    378 A.2d 646 (Del. Super. Ct. 1977) ..................................................................................... 4

Rumbo v. Am. Med. Sys., Inc.,
    2021 WL 1694733 (Del. Super. Ct. Apr. 29, 2021) ............................................................... 2

Smith v. McGee,
    2006 WL 3000363 (Del. Ch. Oct. 16, 2006) ......................................................................... 3

Spine Care Del., LLC v. State Farm Mut. Auto. Ins. Co.,
    2018 WL 810112 (D. Del. Feb. 9, 2018) ............................................................................. 10

Weiss v. Swanson,
    948 A.2d 433 (Del. Ch. 2008) ................................................................................................ 2

Westernbank Puerto Rico v. Kachkar
    2009 WL 6337949 (D.P.R. Dec. 10, 2009),
    report and recommendation adopted, 2010 WL 14165421 (D.P.R. Mar. 31, 2010) ............ 6

Western Assocs. Ltd. V. Market Square Assocs.,
    235 F.3d 629 (D.C. Cir. 2001) ............................................................................................. 11

Statutes and Other Authorities

10 *Del. C.* § 8121 .................................................................................................................. 1, 5

31 P.R. Laws Ann. § 5303 ........................................................................................................ 3

Restatement (Second) of Conflicts § 145 ................................................................................. 4

This is the "**Ebury Parties**"[1] Reply Brief in support of their Motion to Dismiss Defendants–Counterclaim Plaintiffs–Third-Party Plaintiffs' (together, the "**McOsker Parties**[2]") Amended Counterclaims and Amended Third-Party Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). See Amended Counterclaim and Amended Third-Party Complaint (Dec. 9, 2022) [D.I. 55] (the "**Amended Pleading**").

### I. Delaware Law "Borrows" Puerto Rico's Limitations Period and Bars All of the McOsker Parties' Tort Claims

Although the McOsker Parties correctly observe that Delaware considers limitations periods to be procedural issues governed by the forum's law, see Opp. at 22–23, they ignore Delaware's borrowing statute, which explains exactly why Puerto Rico's one-year limitations period governs—and moots—the McOsker Parties' tort claims:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State [Delaware] to enforce such cause of action after the expiration of **whichever is shorter**, the time limited by the law of this State [Delaware], or the time limited by the law of the state or country **where the cause of action arose** [ . . . ]

10 Del. C. § 8121. In other words, Delaware law requires this Court to apply the shorter of Puerto Rico's or Delaware's relevant limitations periods. Elmer v. Tenneco Resins, Inc., 698 F. Supp. 535, 539 (D. Del. 1988) (citing 10 Del. C. § 8121); see also Delargy v. Hartford Accident & Indem. Co., 1986 WL 11562, at *2 (Del. Super. Ct. Oct. 8, 1996) ("The Delaware borrowing statute is an exception to the common law rule that the law of the forum governs in matters relating to the statute of limitations.").

In opposing this dismissal Motion, the McOsker Parties have not contested that "all of the allegedly-tortious activity (1) occurred in Puerto Rico, (2) was conducted by Ebury Parties living

---

[1] The "**Ebury Parties**" are Plaintiffs–Counterclaim Defendants and Third-Party Defendants.
[2] The "**McOsker Parties**" are Defendants–Counterclaim Plaintiffs–Third-Party Plaintiffs.

1

and working in Puerto Rico, and (3) against McOsker Parties living and working in Puerto Rico." Compare Mot. at 21, 24 with Opp. at 22–23 (arguing that Delaware's three-year limitations period controls because it is the forum state). Nor do the McOsker Parties contest that Puerto Rico law gave the McOsker Parties just one year to file their tort claims, or that this one-year period expired before this Action began. Compare Mot. at 24–25 with Opp. at 23–24. Moreover, any exception to Delaware's borrowing statute is particularly inapplicable to this case because the McOsker Parties not only continue to press their own claims against the Ebury Parties in Puerto Rico court, but in fact insisted that the Ebury Parties file their own contract claims in this Delaware federal court. Compare Rumbo v. Am. Med. Sys., Inc., C.A. No. N13C-04-300 PEL, 2021 WL 1694733, at *4–5 (Del. Super. Ct. Apr. 29, 2021) (borrowing statute's exception intended to discourage forum-shopping) with Am. Compl. ¶ 63 (June 25, 2021) [D.I. 16]; Defendants McOsker, BCMG International, LLC, and BCMG Services, LLC's Sep. 16, 2019 Motion to Dismiss Puerto Rico Case at 9 (Oct. 12, 2021) [D.I. 25-1].

While the McOsker Parties attempt to revive their claims through Delaware's "fraudulent concealment" and "inherently unknowable" doctrines, they fail to identify a single allegation that could trigger either tolling doctrine. Compare Opp. at 24–25 (citing no allegations) with, e.g., In re Fruehauf Trailer Corp., 250 B.R. 168, 186 (D. Del. Bankr. 2000) (citing In re ML/EQ Real Estate P'ship Litig., No. CIV.A. 15741, 1999 WL 1271885, at *1 (Del. Ch. Dec. 21, 1999) ("The plaintiff bears the burden of pleading facts to prove that the statute should be tolled."); Weiss v. Swanson, 948 A.2d 433, 451 (Del. Ch. 2008) (claimants bear the "burden to plead specific facts to demonstrate that the statute of limitations was, in fact, tolled and that [they] were not on inquiry notice of the derivative claims" for longer than the relevant limitations period).

To plead fraudulent concealment, the McOsker Parties needed to allege specific facts showing that the relevant Ebury Party affirmatively misled the McOsker Party with the specific intent to put that party "off the trail of inquiry;" their "mere ignorance" of relevant facts cannot toll the limitations period, nor can the defendant's mere failure to disclose those facts. Smith v. McGee, No. 2101-S, 2006 WL 3000363, at *3 (Del. Ch. Oct. 16, 2006) (citations omitted); Krahmer v. Christie's, Inc., 911 A.2d 399, 407 (Del. Ch. 2006).

Meanwhile, to trigger the doctrine of inherently unknowable injuries, the Amended Pleading needed to explain why "discovery of the existence of a cause of action [was] a practical **impossibility**:" it needed to plead specific facts showing why "there must have been no observable or objective factors to put a party on notice of an injury" and that they were "blamelessly ignorant of the act or omission and the injury." Lebanon Cnty. Employees' Retirement Fund v. Collis, 287 A.3d 1160, 1215 (Del. Ch. 2022) (citations omitted, emphasis in original). But here, the McOsker Parties' complaints stem from business activity, missed payments, "missing" tax certificates— open and notorious conduct of which the McOsker Parties had contemporaneous knowledge. See generally AC, ATPC.

The McOsker Parties' tolling attempts would fare no better under Puerto Rico law because the Amended Pleading alleges no facts that would support any of Puerto Rico's three statutory tolling possibilities. See Rodriguez Narvaez v. Nazario, 895 F.2d 38, 43–44 (1st Cir. 1990) (quoting 31 P.R. Laws Ann. § 5303) ("Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgement of the debt by the debtor."). And while Puerto Rico caselaw contemplates the possibility of "equitable tolling in a case of 'damages willfully and wrongfully concealed by [the wrongdoer]'" that standard is functionally equivalent to the Delaware fraudulent concealment law, and therefore fails

3

for the same reasons. See Ramirez Morales v. Rosa Viera, 815 F.2d 2, 4 (1st Cir. 1987) (quoting Rivera Encarnacion v. E.L.A., 113 P.R.R. 498 (P.R. 1982)).

Finally, even if the McOsker Parties' vague arguments could qualify as allegations that state any claim or plead any tolling period, they again do not contest that (1) they allege no dates at all in connection with their defamation claims, and (2) July 2019—when the Ebury Parties moved out and sued the McOsker Parties—is the latest date on which any of their other claims could have arisen, and the latest date on which any claim could have been tolled: by July 2019, any reasonable person would have understood that there were serious problems between the Ebury and McOsker Parties. Compare Mot. at 24–25 with Opp. at 22–25; see also In re Coca-Cola Enters., Inc. S'holder Litig., C.A. No. 1927-CC, 2007 WL 312370, at *7 (Del. Ch. Oct. 17, 2007) (dismissing complaint that alleged facts showing plaintiffs "either were or should have been aware of [their] claims" before the limitations period). The McOsker Parties have not met their burden to "plead facts supporting the applicability of [a tolling] exception." See State ex re. Brady v. Pettinaro Enters., 870 A.2d 513, 524–25 (Del. Ch. 2005).

Statutes of limitations exist to protect defendants from long-dead grievances that could only be "proven" by vanishing witnesses with fading memories. Rudginski v. Pullella, 378 A.2d 646, 649 (Del. Super. Ct. 1977) (citation omitted). This principle is particularly important here, where all of the parties were based and conducted their business in Puerto Rico, and all allegedly-wrongful acts and damages occurred in Puerto Rico. See Penn. Emp. Benefit Tr. Fund v. Zeneca, Inc., 710 F. Supp. 2d 458, 468 (D. Del 2010) (citing Restatement (Second) of Conflicts § 145). Therefore, Puerto Rico's one-year limitations period bars the McOsker Parties' "Fraud / Fraudulent Inducement," "Tortious Interference with Prospective Business Advantage / Business Relations," "Tortious Interference with Contractual Relations," Conversion, Civil Conspiracy,

Unjust Enrichment, "Defamation (Slander / slander per se)," and "Defamation (Libel)" claims: not a single one "remained viable on February 12, 2021[,] when Plaintiffs initiated this Delaware Litigation." 10 *Del. C.* § 8121; Mot. at 25.

## II.   The Opposition's Substantive Tort Arguments Ignore Inconvenient Law

The Amended Pleading's Tort claims fare no better on the merits. Compare generally Mot. at 25–29 with Opp. at 26–30. On conversion, the Opposition's argument flatly contradicts the Amended Pleading's relevant allegations. Compare Opp. at 26 (attempting to hold Messrs. Hanratty, Seymour, and Ms. Vega liable for conversion because Ohio lien certificates that "belong[ed] to Carry Trade and other affiliated entities" are "in [Mr. Hanratty's] possession") with AC ¶¶ 74, 136 (alleging that Mr. McOsker voluntarily pledged Carry Trade's assets to an entity controlled by Mr. Hanratty).

Among other reasons, the Amended Pleading fails to allege tortious interference because it pleads no facts suggesting that PRIDCO **breached** any contract with any McOsker Party. Compare Opp. at 26–27 (arguing that PRIDCO "breach[ed its contract with BCMG Services by withholding the tax credit") with AC ¶¶ 62, 66–67 (alleging that PRIDCO "provisionally approved" the tax credit, PRIDCO currently is auditing "McOsker and his companies," and the McOsker Parties "are confident" that they will eventually receive the PRIDCO "contract" tax credit).

The McOsker Parties cite no law to justify their argument that defamation privilege protects only statements "made during proceedings"—whatever that means—and flatly ignore that "[a]ll ten allegedly-wrongful statements are so vague that it is highly questionable whether they meet Rule 8's low notice pleading standard;" six of the alleged "false and defamatory statements of fact" were *per se* privileged; four are mere "report[s]" of the Ebury Parties' various litigations

5

against the McOsker Parties; and "at least two could never have been defamatory at all" because they contained no "false statement of fact" and were not "public[shed] to a third party." Compare Opp. at 27–28 with Mot. at 27.

And in attempting to save their unjust enrichment claim, the McOsker Parties again misstate governing law, relying entirely on Westernbank Puerto Rico v. Kachkar to claim that they can invoke unjust enrichment so long as a statute does not preempt their claim. See Opp. at 28 (citing Civ. No. 07-1606 (ADC/BJM), 2009 WL 6337949, at *29 (D.P.R. Dec. 10, 2009), report and recommendation adopted, 2010 WL 14165421, at *1 (D.P.R. Mar. 31, 2010)). In doing so, the McOsker Parties ignore the fact that Puerto Rico has statutes codifying its contract, fraudulent inducement, and conversion laws—the exact same claims that the McOsker Parties have attempted to allege in this case. Opp. at 27–28 (arguing that defendants' Puerto Rico breach of contract, fraudulent inducement, and conversion counterclaims "employ the same set of facts as the unjust enrichment claim [and] are all based on applicable statutes.").

Scrounging up dicta that "parties cannot have their cake and eat it, too," the McOsker Parties argue that litigants can plead unjust enrichment simply by failing to allege facts pleading any other Puerto Rico law claim. See Opp. at 29. That is, of course, absurd—and it is an absurdity roundly, regularly rejected by Puerto Rico courts. See, e.g., Westernbank, 2009 WL 6337949, at *29 ("That the defendants have failed to plead these [contract, fraudulent inducement, and conversion counter]claims adequately to survive the motion to dismiss, or that [plaintiff's] affirmative defenses have defeated them, does not render the underlying tort and contract laws inapplicable to the situation.").

6

### III. The Vague CRIM Contract Allegations Neither Trump the BCMG Operating Agreement's Integration Clause Nor Plead Any Ebury Party's Scienter

The Opposition falls short of explaining how (and which of) the Ebury and McOsker Parties came to a final, definitive, binding contract regarding the CRIM Proposal. Compare Mot. at 20–21 (arguing that "the McOsker Parties plead that there were extensive, years-long communications discussing various business matters, but fail to plead the existence of any agreement") with Opp. at 21 (arguing "there was a meeting of the minds as to the terms of the contract that is established through writings in addition to witness testimony and consent to such terms that it is enforceable") (citing nothing).

The McOsker Parties identify no allegations explaining why Messrs. Hanratty and McOsker's "late 2017" oral conversations or Mr. Hanratty's "approach[] of various banks and lenders"—which both occurred at some unspecified time after the parties insisted on a written non-disclosure contract in March 2017—provide specific, final contractual obligations that control over yet another **written** contract they executed in **February 2019**—a written contract that did include an integration clause. Compare Opp. 20–21 (arguing that "[t]he parties 'assent to these terms is shown through specific conversations and writings" without identifying those "conversations" or "writings") (citing nothing) with Mot. at 23 (arguing "As in K-Mart and Copan, here, the McOsker Parties plead that there were extensive, years-long communications discussing various business matters, but fail to plead the existence of any final agreement.") (citing K-Mart Corp. v. Davis, 756 F. Supp. 62, 68 (D.P.R. 1991)).

Nor do the McOsker Parties explain why Mr. Hanratty's conversations with third parties—"various banks and lenders"—would prove the existence of a final, definitive agreement between Mr. Hanratty and **Mr. McOsker**; there is no allegation that any of those "various banks and lenders" had the power to, and did, negotiate for Mr. McOsker vis-à-vis Mr. Hanratty. See Opp. at

7

21. And the McOsker Parties muster no facts at all to support their allegation that "the BCMG Capital, LLC operating agreement does not contain the entire agreement of the parties related to the CRIM Proposal." See AC ¶ 51; but see BCMG Capital Operating Agreement, D.I. 66-1 § 13.8 ("This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter contained herein."); see also Interactive Corp. v. Vivendi Universal, S.A., No. Civ.A. 20260, 2004 WL 1572932, at *16 (Del. Ch. June 30, 2004) ("conclusory allegations of a prior agreement at odds with the written contract" fail to state a claim).

Moreover, the McOsker Parties again rely on nothing but circular reasoning and conclusory allegations to claim that they adequately pleaded Mr. Hanratty's scienter, and therefore fraudulent inducement, in connection with the CRIM Proposal. See Opp. at 29–30 (purporting to cite N. Am. Catholic Educ Programming Found., Inc. v. Cardinale, 567 F.3d 8, 12 (1st Cir. 2009) ("Defendants adequately allege that [Mr.] Hanratty knew the statements were false when made."); but see Mot. at 29 (quoting Cardinale, 567 F.3d at 12–13) (the McOsker Parties did not allege "particulars that suggest scienter" to support their allegation that Mr. Hanratty "'**feigned** [his] original expressed intention' [ . . . ] at the (unidentified) times Mr. Hanratty allegedly made those representations.").

8

### IV. The Trystone Trades Allegations are Still Incoherent

In moving for dismissal of the Trystone Trades-related contract claim, the Ebury Parties argued that, to the extent they could understand the Amended Pleading's allegations, it attempted to allege that ESC breached a contract with Trystone Capital and Trystone Capital assigned its contractual rights against ESC to Mr. McOsker, yet "fails to clearly identify that contract's parties, let alone those parties' respective duties or whether or how they breached those duties." Mot. at 22–23 (citing AC ¶¶ 178–80). The McOsker Parties' circular, conclusory response does not clarify the matter. See Opp. at 22 (arguing that AC ¶¶ 178 and 179 "alleged the parties to the contract, their respective obligations, subsequent breaches, and damage as a result") (citing and explaining nothing); but see, e.g., Ramunno v. Crawley, 705 A.2d 1029, 1034 (Del. 1998) (Delaware courts must "ignore conclusory allegations that lack specific supporting factual allegations.")

The McOsker Parties further undermine their Trystone Trades contract claim by annexing Exhibit D to the opposition. Compare AC ¶¶ 178–80 with Opp. Ex. D. While the McOsker Parties call Exhibit D "[t]he Trystone Contracts," the word "Trystone" does not appear even once in that 83-page exhibit! See generally Opp. Ex. D. In fact, those contracts appear to all be between ESC, on the one hand, and LienClear – 001, LienClear – 002, and LienClear LLC—Trystone Capital is not a party to any of those contracts. Id.

Why on earth are the **McOsker Parties** claiming that an (unprovided, unspecified, undated) assignment **from Trystone Capital** gives the McOsker Parties the right to sue ESC and / or Mr. Hanratty for breach of (unspecified) terms of the three contracts in Exhibit D? Cf. Afzal v. New Jersey Board, No. 22-1609, 2022 WL 4533826, at *2 (3d Cir. Sep. 28, 2022) (affirming district court's dismissal of *pro se* amended complaint that "contained many of the same conclusory allegations as its predecessor and, rather than elucidating plaintiffs' allegations, only

9

served to add new, similarly incoherent claims," and therefore "did not provide fair notice of the claims or the grounds upon which they rest.").

Even if this reader could make heads or tails of the Trystone Trades contract allegations, the McOsker Parties' conclusory allegation that "McOsker settled the lawsuit and Trystone Capital assigned its claim(s)" fails to plead an enforceable assignment. Compare AC ¶¶ 180, 211 with, e.g., Spine Care Del., LLC v. State Farm Mut. Auto. Ins. Co., No. CV 17-1816, 2018 WL 810112, at *3–4 (D. Del. Feb. 9, 2018) (ccitation omitted) ("'Conclusory language' is not sufficient to show an assignment"). To allege contractual assignment, a claimant must either plead the "language of the assignment or attach[] a copy of the actual assignment." Id. at *4. The McOsker Parties do neither.

V. **The McOsker Parties Identify No Allegations That Transform Their Routine Business Complaints Into a Federal RICO Case**

The Opposition devotes three pages to RICO's high-level principles and bulk citations of the Amended Pleading instead of grappling with why the McOsker Parties have not pleaded any RICO claims: the Amended Pleading does not plead a "related," "continuous" racketeering pattern that "lasted 'a substantial period of time'" or "projects into the future with a threat of repetition;" it does not allege that each and every Ebury Party "'agree[d] to commit [RICO's] predicate acts' and 'knew that those acts were part of a pattern of racketeering activity;'" it does not allege RICO's predicate bank fraud, wire fraud, or money laundering. Compare Opp. at 30–33 with Mot. at 29–34.

Perhaps the most glaring omission is the McOsker Parties' blanket refusal to acknowledge, let alone deal with, the fact that federal courts "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." Mot. at 31 (quoting Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988). The Third Circuit has rejected RICO

10

claims where "the 'essence' of the complaint was that the defendants had 'diverted and / or misappropriated monies due and payable to him under purported claims of contractual right.'" Opp. at 31 (quoting Kolar v. Preferred Real Est. Invs., Inc., 361 F. App'x 354, 363 (3d Cir. 2010)). The Third Circuit also rejected RICO claims where the plaintiff failed to allege facts that "inject[ed] precision and some measure of substantiation into [their] fraud allegations." Id. at 32 (quoting Lum v. Bank of Am., 361 F.3d 223, 25 (3d Cir. 2004)).

Yet here, the McOsker Parties base their RICO claims on the exact same vague "facts" alleged in support of their contract and business tort claims. See generally AC, ATPC. And unlike in the Ebury Parties' own well-pleaded RICO claims, the McOsker Parties include no facts suggesting that the Ebury Parties engaged in a "continuing" racketeering enterprise that perpetrated the same types of wrongs against numerous victims similarly-situated to the McOsker Parties. Id.

The McOsker Parties' conclusory argument that their "300+ paragraph Amended [Pleading] is riddled with specific 1962(c) violations that are pled with particularity," "supported" with block-cites that identify nothing but legal conclusions like "wire fraud," "theft," "money laundering," and "extortion," simply do not allege the extensive, complicated facts necessary to state their RICO claims. Compare Opp. at 31 (block-citing Amended Pleading) with, e.g., Kolar, 361 F. App'x at 363 (quoting Western Assocs. Ltd. V. Market Square Assocs., 235 F.3d 629, 637 (D.C. Cir. 2001) (courts must "particularly scrutinize [RICO fraud allegations] because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.").

## VI. The Amended Pleading Pleads No Facts to Justify Dragging the Third-Party Defendants Into this Action

Finally, the McOsker Parties yet again duck controlling law instead of acknowledging that this Court only can exercise personal jurisdiction over the third-party defendants if (1) it finds that the Amended Pleading pleads facts alleging each and every single third-party defendant's individual knowing agreement to and participation in a RICO conspiracy **or** (2) that the Amended Pleading's claims against each third-party defendant arise out of that individual's Delaware minimum contacts. Compare Mot. at 34–35 with Opp. at 33–34. In flatly ignoring their failure to plead a single contact between any of the third-party defendants and Delaware, the McOsker Parties acknowledge that this Court cannot exercise personal jurisdiction over any third-party defendant if it dismisses the RICO conspiracy claim against that Ebury Party. Id.

## CONCLUSION

The Amended Pleading is so flimsy that the McOsker Parties ask this Court to preserve their pleadings **because** their allegations are "too vague" to plead any "underlying tort claim or contract claim." See Opp. at 29 ("Here, however, if the terms of the contract are too vague, there is no underlying tort claim or contract claim, i.e., there is no **applicable statute**; thereby sustaining Movants' unjust enrichment claim in the alternative.") (emphasis in original).

Because the McOsker Parties still have not "plead[ed] adequate factual content to support a reasonable inference" of the Ebury Parties' liability, and still "[do] not present cognizable legal claims to which [the Ebury Parties] c[an] respond on the merits," the Court should dismiss all of their amended counter- and third-party claims. Accord Afzal, 2022 WL 4533826, at *3 (citing Garrett v. Wexford Health, 938 F.3d 69, 93–94 (3d Cir. 2019)).

12

Dated:  May 23, 2023

| | |
|---|---|
| GUSRAE KAPLAN NUSBAUM PLLC<br>Kari Parks (*pro hac vice*)<br>120 Wall Street, 25th Floor<br>New York, NY 10005<br>(212) 269-1400<br>kparks@gusraekaplan.com | SMITH KATZENSTEIN & JENKINS LLP<br><br>*/s/ Kathleen M. Miller*<br>Kathleen M. Miller (No. 2898)<br>Julie M. O'Dell (No. 6191)<br>Brandywine Building<br>1000 N. West Street, Suite 1591<br>Wilmington, DE 19801<br>(302) 652-8400<br>kmiller@skjlaw.com<br>jodell@skjlaw.com<br><br>*Attorneys for The Ebury Parties* |